Elizabeth SWEZEY and Robert J. Swezey, guardians of Daniel Swezey,

v.

The HOME INDEMNITY COMPANY.

Appeal of Elizabeth SWEZEY and Robert J. Swezey.

No. 82–1181.

United States Court of Appeals, Third Circuit.

Argued Sept. 15, 1982.

Decided Oct. 20, 1982.

As Amended Oct. 29 and Nov. 16, 1982.

ting by designation.

Susan C. Del Pesco, (argued), Richard I. G. Jones, Vernon R. Proctor, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for appellants.

F. Alton Tybout (argued), Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for appellee.

Before GIBBONS, WEIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

■ This case addresses the proper determination of insurance benefits a non-domiciliary is entitled to receive under an automobile policy drafted in accordance with the Pennsylvania no-fault law and issued to a resident of that state. Although the district court correctly concluded that the benefits due were those provided by the state of domicile, we hold that it erred in failing to compute the amount payable. Accordingly, we will vacate the judgment and remand for further proceedings.

Daniel Swezey, a Delaware resident, was seriously injured in an automobile collision that occurred in Delaware on June 10, 1979. Daniel was a passenger in a car registered in Pennsylvania and operated by Jeffrey Kurtz, a resident of Pennsylvania. In force at the time was an insurance policy on the Kurtz automobile issued by defendant Home Indemnity Company in conformance with the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 Pa.Stat.Ann. §§ 1009.101–.301 (Purdon Supp.1982).

Plaintiffs, Elizabeth and Robert J. Swezey as guardians of Daniel, filed a diversity action in the district court seeking a declaration of their rights under the no-fault insurance policy. There were no factual disputes and both parties moved for a summary judgment. The district court decided in favor of defendant,[1] and thereafter de-

---

1. The district court's opinion on the motions for summary judgment is reported at 529   F.Supp. 608 (D.Del.1982).

nied plaintiffs' motions to alter the judgment and to amend the complaint.

The complaint asserts that, under the "full basic loss benefits" provisions of the policy, Daniel is entitled to recover medical expenses incurred as a result of the collision. Plaintiffs sought a declaratory judgment "determining the respective rights and liabilities of the plaintiffs and defendant under the circumstances of the ... accident, including the amount of insurance benefits due plaintiffs."[2] Defendant contended that plaintiffs were entitled, not to the unlimited medical benefits provided by the Pennsylvania statute, but only to the lesser amounts fixed by Delaware law.

The district court's analysis of the Pennsylvania No-Fault Act focused on sections 201(b) and 110(c)(1). 40 Pa.Stat.Ann. §§ 1009.201(b), 1009.110(c)(1). Section 201(b) provides that if an accident occurs outside Pennsylvania, an injured occupant of an insured vehicle is "entitled to receive basic loss benefits."[3] Under section 110(c)(1), the "benefits available to any victim" are "determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect" in the victim's domiciliary state.[4] After reviewing the provisions of the Delaware motor vehicle insurance act, 21 Del.Code Ann. § 2118 (1979 & Supp.1980), the court concluded that it qualified as a "no-fault plan" referred to in the Pennsylvania statute. Therefore, the court concluded, "[s]ection 110(c)(1) directs the plaintiff to recover pursuant to the Delaware Act. He is not enti-

tled to recover basic loss benefits provided by the Pennsylvania Act." 529 F.Supp. at 614. The court entered judgment in favor of defendant.

Plaintiffs filed a post-judgment motion under Fed.R.Civ.P. 59 and 60 requesting an evidentiary hearing to determine the amount due them under the Delaware act. The district court denied the motion, stating that plaintiffs' complaint "... claims only that Swezey is entitled to basic loss benefits provided by the Pennsylvania Act from Home.... It does not claim any rights from Home pursuant to the Delaware No-Fault Act." Plaintiffs then asked leave to amend their complaint, asserting that "... the Court's decision requires the recovery by plaintiffs' ward to be pursuant to the Pennsylvania no-fault statute, but in an amount determined by the Delaware statute." After reviewing the case again, the court denied the motion and plaintiffs appealed.

Plaintiffs contend that the district court erred in concluding that the unlimited medical benefits allowed by Pennsylvania apply only to its domiciliaries and that the Delaware statute qualifies as a "no-fault plan." In the alternative, plaintiffs assert that the district court erred in refusing their post-trial request to fix the amount of Delaware no-fault benefits.

In addressing these contentions on appeal, it is important to bear in mind that plaintiffs' rights arise under the Home insurance policy, and not under any particular statute. Some of the problems in this case

---

2. Plaintiffs had previously filed a suit alleging common law negligence against Jeffrey Kurtz in the Delaware state court. That case was settled, but the release given by the plaintiffs reserved the right to pursue their remedies against Home under the Delaware or Pennsylvania No-Fault Acts.

3. Section 201(b), 40 Pa.Stat.Ann. § 1009.-201(b), reads in pertinent part:

"Accident outside this State.—If the accident resulting in injury occurs outside of this Commonwealth, a victim ... is entitled to receive basic loss benefits if such victim was ...: (2) the driver or other occupant of a secured vehicle."

4. Section 110(c)(1), 40 Pa.Stat.Ann. § 1009.-110(c)(1), reads in pertinent part:

"Applicable law.—
(1) The basic loss benefits available to any victim ... shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs."

have been caused by the tendency of the parties to lose sight of the basic nature of the controversy. This suit is purely and simply a contract claim based upon an insurance policy and it is the terms of that policy that determine the outcome. The extended forays into conflicts of law and discussions about which statute controls have tended to obscure the basic issue.

Although it is true that the insurance contract incorporates and was written in conformance with the Pennsylvania no-fault law, it is the policy, not the Pennsylvania statute, which directly affects the parties. The incorporation of state statutes does not alter the contractual nature of the claim and the issue remains one of interpreting the policy. The parties have not raised any question as to which state's rules of construction apply and therefore no genuine, conflicts of law problem is presented.

The frequent references to the Pennsylvania and Delaware statutes must be understood as bearing on the terms of the policy, insofar as the statutes have been melded into the contract. The statutes, however, do not acquire any independent controlling effect. Although this clarification may appear to be hypertechnical, it is a distinction with a difference and one which has caused some misunderstanding between the parties.

We begin our analysis, therefore, with an examination of the insurance contract upon which the plaintiffs assert a right to recover medical benefits. The policy provides that

"[i]n accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act, the Company will pay any or all personal injury protection benefits for: (a) medical expenses, ... for bodily injury to an eligible person due to an accident resulting from the ... use of a motor vehicle ....

* * * * * *

'eligible person' means (b) 'any ... person who sustains injury (1) while occupying ... the insured motor vehicle; ....

* * * * * *

... The premiums for and the coverage of this policy conforms [sic] to the Pennsylvania No-Fault Motor Vehicle Insurance Act."

To determine the coverage conditions applicable to the facts at hand, therefore, it is necessary to consult the Pennsylvania statute.

As noted earlier, the district court concluded that sections 110(c)(1) and 201(b) should be read together so that the basic loss benefits, which include medical expenses, are determined by the no-fault plan of the state in which the victim is domiciled. A different result is required when the domiciliary state does not have a no-fault plan. Plaintiffs contend that Delaware, being the state of domicile and the locus of the accident, does not have a true no-fault plan and, therefore, section 110(c)(1) has no application to this case.

We turn, then, to an examination of the Delaware statute, 21 Del.Code Ann. § 2118. Under Delaware law, an injured party's medical expenses and lost earnings are paid by his no-fault insurer. *Id.* § 2118(a). Although the injured party may thereafter sue the tortfeasor for damages under common law negligence theories, there may be no recovery for items that have been received from the no-fault insurer. *Id.* § 2118(g). The insurance company, however, may bring a separate action against the tortfeasor to recover the amounts the carrier has paid its insured. *Id.* § 2118(f).

In 1977, the Delaware legislature amended its statute to prohibit the joinder of the victim and the no-fault insurer in an action against the tortfeasor. *Id.* at § 2118(f)(4). The district court concluded that the net effect of the 1977 amendment was to prevent the injured party from introducing evidence of his no-fault damages in a suit brought against the tortfeasor. Thus, the act "made a deliberative and relevant change in the evidentiary rules of practice and proof" in Delaware with respect to third-party actions. 529 F.Supp. at 614.

In determining what the Pennsylvania act meant to include within the term

"no-fault plan," as applied to other states, the district court referred to regulations promulgated by the Pennsylvania Insurance Commissioner. In the absence of case law or explanatory language in the policy, we believe it was permissible for the court to consult these regulations.

The pertinent regulation defines a "no-fault plan" as one which requires compulsory insurance, first party benefits, and either a restriction on the right to bring an action for non-economic detriment or a relevant change in the evidentiary rules of practice and proof with respect to those suits. 31 Pa.Code § 66.41(b)(2) (1982). The district court found that the Delaware statute met these requirements, and thus qualified as a no-fault plan under the Pennsylvania Act. We find no error in the district court's determination on this point. *Cf. Yoder v. Dressler,* 505 F.Supp. 111, 113 n.2 (M.D.Pa. 1981) (court's holding that pre-1977 Delaware statute is not a no-fault plan "will not necessarily apply to similar factual situations arising after June of 1977," the date of the amendment.)

Plaintiffs also argue that, even if the Delaware statute is a no-fault plan, they are still entitled to the Pennsylvania basic loss benefits, because the Pennsylvania legislature did not intend to differentiate between victims on the basis of their domicile. They note that section 201(b) says that the victim of an out-of-state accident is "entitled to receive basic loss benefits" and no limitation appears in that section. The district court reasoned that adopting plaintiffs' argument would in effect read section 110(c)(1), which refers to the law of domiciliary states, out of the act. 529 F.Supp. at 611.

The court also relied upon *Toter v. Knight,* 278 Pa.Super. 547, 420 A.2d 676 (1980), a decision of the Pennsylvania Superior Court addressing the interplay between two other, parallel sections of the act which govern a victim's right to sue in tort. The Superior Court noted that although the act abolished tort liability in Pennsylvania in most automobile injury cases, section 110(c)(2) (a companion to the subsection under consideration here) provides that the right to sue for negligence is determined by the law of the victim's domicile. The Superior Court concluded that the two sections of the act were complementary rather than conflicting.

In the course of its discussion, the Superior Court also referred to section 110(c)(1), and said that a nonresident of Pennsylvania "is remitted to the benefits available under the plan of his home state," even though section 201(a) extends benefits to victims injured in Pennsylvania. 420 A.2d at 679.[5] *Toter* acknowledges, then, that the Pennsylvania Act does differentiate the benefits payable according to the law of the victim's domicile.

We are satisfied that the district court did not err in applying the text of section 110(c)(1) to limit the benefits to which the plaintiffs were entitled. However, the court did not clearly differentiate between the contract terms and the statutes as such when it stated that "[s]ection 110(c)(1) directs the plaintiff to recover pursuant to the Delaware Act. He is not entitled to recover basic loss benefits provided by the Pennsylvania Act." 529 F.Supp. at 614. The parties did not assist in clarifying the situation. In the hearing on summary judgment, as well as in their first post-trial motion, plaintiffs failed to point out that they have no right to recover against Home directly under the Delaware statute because that act applies only to vehicles registered in Delaware. *Nationwide Insurance Company v. Battaglia,* 410 A.2d 1017 (Del.1980).

---

**5.** The *Toter* case was concerned, not with the construction of an insurance contract as in the present case, but with a choice of law question—namely, whether a New Jersey victim's right to sue in Pennsylvania for a collision occurring there was determined by his own state's law or that of Pennsylvania. In discussing § 110(c)(1), by way of dictum, the court said that a non-resident victim "is completely excluded from the benefits provided under Pennsylvania's No-Fault Act, but he keeps the right to recover the benefits that are due him under the no-fault plan in effect in his own home state." 420 A.2d at 681. This statement is consistent with the result we reach, but we believe it must be read in light of the issue presented to us, that is, the interpretation of a contract.

The analysis of sections 110(c)(1) and 201(b) did not mark the end of the dispute which the district court was asked to resolve, but reached only half-way. The court correctly determined that section 110(c)(1) operates to limit the benefits the plaintiffs could recover, but erred in attributing independent significance to that determination rather than reading it into the policy. As we noted earlier, the rights plaintiffs have are those included in the policy—not the statute. When the wording of section 110(c)(1) is incorporated into the policy, it restricts the amount recoverable, but does not eliminate plaintiffs' entitlement to benefits under the insurance contract.

By including the pertinent text of the Pennsylvania act in the policy, Home agreed to pay basic loss benefits in differing amounts depending on the domicile of the victim. For a domiciliary of Pennsylvania, the benefits are the unlimited medical coverage of the Pennsylvania act. When the victim is a domiciliary of another no-fault state, the amount of benefits is calculated by reference to the schedule adopted in that locality, in this case Delaware. Plaintiffs here are not required to commence a separate suit or claim under Delaware law. As the *Battaglia* case points out, they could not maintain such a suit.

Having correctly determined the yardstick which should be applied, the district court erred in failing to calculate the amount, if any, of benefits due. Plaintiffs' complaint, although not a model of clarity, did ask for a ruling on the "amount of insurance benefits due plaintiffs." In any event, Fed.R.Civ.P. 54(c) provides, in part, that "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." *See Glick v. Campagna,* 613 F.2d 31, 37 n.5 (3d Cir. 1979).

We are not in a position to calculate the benefits ourselves because there are matters which must be addressed initially by the district court. For example, there are open questions on what the applicable limits in the Delaware statute are and what effect, if any, plaintiffs' receipt of benefits under their own policy might have on their recovery under the Home contract. These and other questions which might be raised with respect to the amount due require that the case be returned to the district court. *See Pullman-Standard v. Swint,* —— U.S. ——, ——, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66 (1982).

Accordingly, the judgment of the district court granting summary judgment in favor of defendant will be vacated and the case will be remanded to the district court for further proceedings consistent with this opinion.