**Jay C. McKAY**

v.

**LIBERTY MUTUAL INSURANCE CO., General Accident Insurance Co., Equitable Life Assurance Society of the United States and ICI Americas, Inc.**

**C.A. No. 83–3531.**

United States District Court, E.D. Pennsylvania.

Jan. 25, 1984.

John Mattioni, Philadelphia, Pa., for plaintiff.

Larry H. Spector, Lawrence Robinson, Jim Haggarty, Ted Mann, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This action, initially filed in the Court of Common Pleas of Philadelphia County, and removed to this court, arises out of an automobile accident resulting in grave injuries to the plaintiff. It is undisputed that on July 3, 1982 the plaintiff was a passenger in New Jersey in a vehicle owned and operated by Gerald Monigle, ("Monigle"). The vehicle left the road and struck a utility pole. McKay sustained a compressed fracture of the spinal column. He has incurred and continues to incur medical health care and rehabilitation expenses as well as lost income. He appears to be permanently disabled.

At the time of the accident the plaintiff, a resident of Delaware, maintained a policy of no-fault automobile insurance issued by Liberty Mutual Insurance Company ("Liberty Mutual") under Delaware law. Monigle, a resident of Pennsylvania, maintained an automobile insurance policy issued by General Accident Insurance Company ("General Accident") under the Pennsylvania No-Fault Motor Vehicle Insurance Act. Also at the time of the accident, plaintiff was an eligible member of an ICI Americas, Inc. Health Care Plan ("Plan") administered by defendant Equitable Life Assurance Society of the United States.[1]

Liberty Mutual has paid to McKay $100,000 in first party No-Fault benefits under its policy (¶ 13, Stipulation of Facts of Plaintiff, Jay C. McKay and Defendant, General Accident Insurance Co.). Nevertheless, in addition to other remedies, plaintiff seeks to have this court determine that General Accident is liable to him for his medical, health care or rehabilitation expenses as well as his lost wages under Monigle's personal injury protection coverage.[2] The sole matter before the court at this time[3] is the cross-motions of the plaintiff and defendant for summary judgment. The parties have stipulated to a number of facts and there is no dispute over any material fact. Therefore, the court may entertain the motions for summary judgment. Rule 56 of the Federal Rules of Civil Procedure.

Some salient factors are to be borne in mind in this portion of the case: plaintiff is a resident of Delaware covered by automobile insurance issued under Delaware law; he seeks to recover, as a non-relative passenger, from a Pennsylvania No-Fault carrier under a policy issued to a Pennsylvania driver in compliance with the Pennsylvania No-Fault Motor Vehicle Act, 40 Pa.Stat. Ann. §§ 1009.101–.301 (Purdon Supp.1982). The plaintiff has been paid $100,000 for economic loss under his own policy[4] and has, or will, receive the policy limits of General Accident for his pain and suffering. He seeks to have this court declare that he is entitled to personal injury protection ("PIP") coverage for those bills and expenses beyond those covered by Liberty Mutual benefits.

In *Swezey v. Home Indemnity Co.,* 691 F.2d 163 (3d Cir.1982), the Court of Appeals for the Third Circuit was faced with a resident of Delaware who was also injured in a car driven by a Pennsylvania resident and insured under the Pennsylvania No-Fault statute by defendant Home Indemnity Company. The plaintiffs, guardians of

---

1. It is defendant Equitable who removed the case to federal court based on a federal question in that the Plan is administered pursuant to the Federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

2. The plaintiff represents to this court that in the case of *McKay v. Monigle,* (Docket No. 1232, Pennsylvania Court of Common Pleas, Philadelphia County), General Accident has offered, and the plaintiff has accepted, settlement for the policy limits for the pain and suffering aspect of this case.

3. The case essentially breaks down to separate issues regarding each defendant. His complaints against Liberty Mutual and Equitable Life and ICI Americas will be dealt with separately.

4. The plaintiff's dispute with Liberty Mutual, his own insurer, focuses on the extent to which he contends he intended to be covered and the coverage they actually provided.

the injured passenger, sought a court determination that they were entitled to unlimited medical benefits provided under Pennsylvania law. The defendant contended that plaintiffs were entitled only to those medical benefits fixed under Delaware law. The court began its analysis by stating:

> In addressing these contentions on appeal, it is important to bear in mind that plaintiffs' rights arise under the Home insurance policy, and not under any particular statute.... This suit is purely and simply a contract claim based upon an insurance policy and it is the terms of that policy that determine the outcome. *Swezey v. Home Indemnity Co.,* 691 F.2d at 165–166.

In the case *sub judice* the General Accident policy describes its Personal Injury Protection Coverage as follows:

> In accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act, the Company will pay any or all personal injury protection benefits for *bodily injury* to an *eligible person* due to an accident resulting from the maintenance or use of a *motor vehicle* as a vehicle. (emphasis original)
>
> "eligible person" means
>
> .    .    .    .    .
>
> (b) any other person who sustains injury
> (1) while occupying ... the insured motor vehicle; ...

(PIP Coverage, pages 1, 2)

Further, the policy provides:

CONDITIONS

> I. Applicable Law. Regardless of any other provisions of this endorsement, the personal injury protection coverage available to any eligible person or any survivor(s) of a deceased eligible person shall be in accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act.

(PIP Coverage, page 6)

As was the case in *Swezey,* the General Accident policy requires turning to the Pennsylvania No-Fault Motor Vehicle Act to determine the applicable law to be used to calculate the amount of personal injury protection benefits. Section 110 of the Act sets out the available basic loss benefits:

> § 1009.110   Motor Vehicles in interstate travel
>
> .    .    .    .    .
>
> (c) Applicable law.—
> (1) The basic loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs.
>
> .    .    .    .    .

The Pennsylvania Superior Court has described the effect of Section 110(c)(1) as follows:

> If the non-resident is domiciled in a state that has in effect a state no-fault plan for motor vehicle insurance, the non-resident is denied the benefits available under Pennsylvania's No-Fault Act and is remitted to the benefits available under the plan of his home state. *Toter v. Knight,* 278 Pa.Super. 547, 553, 420 A.2d 676, 679 (1980).

Delaware, the state of domicile of plaintiff McKay, is a state with a state no-fault plan for motor vehicle insurance. *Swezey,* 691 F.2d at 167. Therefore, in accordance with the insurance policy, which incorporates the Pennsylvania statute, the basic loss benefits available to the plaintiff are to be determined by Delaware law.

The Delaware statute provides the following minimum insurance coverage:

> (2) a.   Compensation to injured persons for reasonable and necessary expenses incurred within 2 years from the date of the accident for:
>
> 1. Medical, hospital, dental, surgical, medicine, x-ray, ambulance, prosthetic services, professional nursing and funeral services. Compensation for funeral services, including all customary charges and the cost of a burial plot for 1 person, shall not exceed the sum of $2,000. Compensation may include expenses for

any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

2. Net amount of lost earnings. Lost earnings shall include net lost earnings of a self-employed person.

3. Where a qualified medical practitioner shall, within 2 years from the date of an accident, verify in writing that surgical or dental procedures will be necessary and are then medically ascertainable but impractical or impossible to perform during that 2-year period, the cost of such dental or surgical procedures, including expenses for related medical treatment, and the net amount of lost earnings lost in connection with such dental or surgical procedures shall be payable. Such lost earnings shall be limited to the period of time that is reasonably necessary to recover from such surgical or dental procedures but not to exceed 90 days. The payment of these costs shall be either at the time they are ascertained or at the time they are actually incurred, at the insurer's option.

b. The minimum insurance coverage which will satisfy the requirements of subparagraph a. of this paragraph is a minimum limit for the total of all payments which must be made pursuant to that subparagraph of $10,000 for any 1 person and $20,000 for all persons injured in any 1 accident.

21 Del.Code Ann. § 2118(a)(2)a., b.

■ There is nothing in the Delaware Act limiting medical benefits to a maximum dollar amount, although the time during which the expenses must have been incurred is limited. However, to satisfy the Pennsylvania mandate that the coverage be "sufficient to satisfy the requirements for security covering a motor vehicle in any state in which any victim who is a claimant ... is domiciled, 40 Pa.Stat.Ann. § 1009.-110(b)(1), it is enough that the plaintiff

receive the minimum benefits of $10,000 required by Delaware law.

Therefore, the plaintiff is entitled to the minimum $10,000 payment of benefits from General Accident if there is neither a contractual nor a statutory bar to such a payment. The defendant General Accident argues that, because Liberty Mutual has paid benefits, both such bars exist. General Accident first argues that to require the payment of $10,000 benefits from it is contrary to the Pennsylvania Superior Court holding in *Antanovich v. Allstate*, —— Pa. Super. ——, 467 A.2d 345 (1983). In that case [5] the victim, who died as a result of injuries sustained in an automobile accident, had an insurance policy covering more than one car. The Superior Court held that the survivors may not obtain recovery beyond the limit of the policy by multiplying the number of covered automobiles by the limit of liability. The case is clearly distinguishable because: (1) "stacking" in *Antanovich* concerned a single policy rather than two different policies; (2) the court relied upon the Pennsylvania No-Fault Act, which is inapplicable in this case in determining the amount of benefits available. The Delaware No-Fault Act is silent regarding "stacking" [6] except insofar as it makes coverage "excess" for passengers, other than Delaware residents, injured outside the State. 21 Del.Code Ann. § 2118(a)(2)g.

The defendant General Accident contends that the policy prevents payment of the $10,000 policy limit under the following provision:

CONDITIONS

H. Non-Duplication of Benefits; Other Insurance. No *eligible person* shall recover duplicate benefits for the same elements of loss under this or any other similar automobile insurance including self-insurance. If the *eligible person* has such other insurance applicable to the accident, the maximum recovery shall

---

**5.** There were actually two cases involved in the consolidated appeal, both having similar fact patterns and legal issues.

**6.** The court uses the word "stacking" with great reluctance and only as a means of discussing the issue presented by the parties.

not exceed the amount payable under the insurance or self-insurance providing the highest dollar limit.

In no case shall the Company be liable for a greater proportion of any loss than this policy's limit of liability bears to the sum of all limits of liability of all applicable insurance and self-insurance. (PIP Coverage, page 6) (emphasis original).

Although the first determination may logically be whether the Liberty Mutual policy is "other similar automobile insurance applicable to the accident," in this particular case it is irrelevant. The plaintiff has medical expenses exceeding $160,-000 and has received from Liberty Mutual $100,000. By receiving $10,000 from General Accident he cannot be said to be receiving "duplicate benefits," but is instead receiving "additional" benefits. There being no statutory or contractual prohibition against payment of $10,000 of basic loss benefits by General Accident, the court finds that they are due the plaintiff.